**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen Gene Seaton, ) | CV 11-01143-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an appeal from a denial of social security disability benefits. We have before us plaintiff's opening brief (doc. 17). Defendant did not respond, but separately filed a motion to remand (doc. 22), to which plaintiff responded (doc. 23). Defendant did not file a reply, and the time for replying has expired.

Plaintiff filed applications for disability insurance benefits and supplemental security income in April 2007. His applications were denied initially and on reconsideration. A hearing was held in March 2009 before an administrative law judge (ALJ). The ALJ denied plaintiff's application. The ALJ concluded that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review in April 2011, rendering the ALJ's decision final. Defendant moves to remand the action for further proceedings. Plaintiff argues that the ALJ's errors require us to remand for an immediate award of benefits.

**I. Background**

Plaintiff alleges an onset of disability of December 24, 2005. Plaintiff was born in

1964 and was 41 years old as of the alleged disability onset date. He has an eighth grade education, and previously worked as a warehouse shipping and receiving supervisor, as a janitor, and as a saw operator. These jobs were performed at a medium or heavy exertional level. Plaintiff underwent surgery in 2006 to repair an umbilical hernia. Plaintiff was in a car accident in June 2007. He complained of lower back pain and abdominal pain. He received chiropractic treatments, which did not relieve his back pain. A July 2007 MRI revealed an annular tear of plaintiff's spine at the L4-L5 disc. Plaintiff was frequently prescribed pain medication, underwent physical therapy, and received epidural injections into his spine.

## II. The ALJ's Disability Determination

The ALJ followed the Social Security Act's five-step procedure to determine whether plaintiff is disabled under the Act. See 20 C.F.R. § 416.920(a)(4). The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged disability onset. At step two, the ALJ found that plaintiff has three severe impairments: degenerative changes in the lumbar spine with chronic low back pain, adjustment disorder with depression and anxiety, and pain disorder.[1]

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. The ALJ proceeded to calculate the plaintiff's residual functional capacity ("RFC"). He found that plaintiff has the RFC to perform a range of light work. Specifically, plaintiff can lift and carry ten pounds frequently and twenty-five pounds occasionally and can stand and walk four hours in an eight-hour workday. He is limited to simple, unskilled work.[2] Based on this RFC, the ALJ concluded at step four that the plaintiff is unable to perform his past relevant work. He noted that plaintiff was 41 years old as of the alleged disability onset date and is a younger

---

[1] The ALJ found that status post hernia repair is not a severe impairment. Plaintiff does not challenge this finding on appeal.

[2] Plaintiff does not challenge the ALJ's findings regarding his mental limitations.

- 2 -

individual as defined by the Social Security Act.

At step five, the ALJ decided that transferability of job skills is immaterial, because the use of the Medical-Vocations Guidelines as a framework supports a finding that plaintiff is not disabled whether or not plaintiff has transferable skills. See 20 C.F.R. pt. 404, subpt. P, app. 2. He noted that if plaintiff could perform the full range of light work, a finding of not disabled would be compelled under medical-vocational rule 202.18. The ALJ decided that plaintiff's additional limitations have "little or no effect on the occupational base of unskilled light work." Tr. at 28. A vocational expert was not consulted. The ALJ concluded that plaintiff is not disabled because there are a significant number of jobs in the national economy that plaintiff can perform.

### III. Evaluation of Medical Source Opinions

A. Treating Physician Dr. John T. Crawford

Plaintiff argues that the ALJ erred by rejecting Dr. Crawford's opinion. We agree. Dr. Crawford, one of plaintiff's primary care physicians, completed a medical source statement in February 2009. Tr. at 507-11. Dr. Crawford concluded that plaintiff can occasionally lift and carry ten pounds and can frequently lift and carry less than ten pounds. He can stand and walk for at least two hours and can sit for four hours in a work day, and must alternate standing and sitting every fifteen minutes. Dr. Crawford concluded that plaintiff can never climb, balance, stoop, kneel, crouch, or crawl, can occasionally reach, and can frequently handle, manipulate, and feel. Id. at 507-08. He found that plaintiff has severe pain which precludes his ability to function, frequently interferes with attention, and constantly prevents the timely completion of tasks. Id. at 510-11. The ALJ gave this assessment little weight, and did not adopt any of Dr. Crawford's limitations into his final RFC assessment. The ALJ effectively rejected the entire opinion.

A medically acceptable treating source's opinion will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.

1  2001). An ALJ must articulate clear and convincing reasons to reject a treating physician's
2  opinion that is not contradicted by another physician's opinion. Bray v. Comm'r of Social
3  Sec. Admin., 554 F.3d 1219, 1228 n.8 (9th Cir. 2009). When the opinion is contradicted, the
4  ALJ must provide specific and legitimate reasons to discount it that are supported by
5  substantial evidence. Id. at 1228. Here, Dr. Crawford's opinion is contradicted by other
6  physicians' opinions that the ALJ afforded weight - that of Dr. Hanks, Dr. Ottney, and Dr.
7  Maloney. Tr. at 26. Thus, the ALJ must offer specific and legitimate reasons supported by
8  substantial evidence to reject Dr. Crawford's opinion.

9  The ALJ's full explanation for assigning Dr. Crawford's "restrictive assessment" little
10 weight was that it was "not well supported by objective findings." Tr. at 25. This reason is
11 not sufficiently specific. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ
12 can meet burden of stating specific and legitimate reasons based on substantial evidence "by
13 setting out a detailed and thorough summary of the facts and conflicting clinical evidence,
14 stating his interpretation thereof, and making findings") (citation omitted).

15 B. Treating Physician Dr. Stephen Hanks & Reviewing Physician Dr. Christopher Maloney

16 Dr. Hanks completed a medical source statement in November 2007.[3] Tr. at 384-386.
17 Dr. Hanks included a number of postural limitations in his assessment. He limited plaintiff
18 to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. In addition,
19 plaintiff was limited to frequent reaching, handling, fingering, and feeling. Id. at 386. Dr.
20 Maloney completed a physical RFC assessment in July 2007. Tr. at 308-315. As a part of
21 his assessment, he concluded that plaintiff is limited to occasional climbing of ladders and
22 crawling, and frequent climbing of stairs, balancing, stooping, and kneeling. He should
23 avoid concentrated exposure to hazards.

24 Defendant concedes that the ALJ erred in evaluating Dr. Hanks and Dr. Maloney's

---

[3]Although plaintiff refers to Dr. Hanks as a "consulting orthopedist," Pl.'s Brief at 7, the record shows that plaintiff was initially referred to Dr. Hanks in September 2007 by one of his primary care physicians. Tr. at 316. He returned to Dr. Hanks in July 2008 and December 2008. Id. at 472, 469.

- 4 -

1  opinions. Although the ALJ recognized that Dr. Hanks recommended postural limitations
2  and afforded the opinion some weight, he did not include any of the postural limitations in
3  the RFC or offer any reasons for discounting them. Similarly, the ALJ discussed Dr.
4  Maloney's findings but did not give any reason for discounting his proposed postural and
5  environmental limitations. This was error.

### C. Consulting Agency Physician Dr. Elizabeth Ottney

Dr. Ottney examined plaintiff in April 2009. Tr. at 512-514. She concluded that plaintiff can lift ten pounds frequently, lift twenty-five pounds occasionally, and stand and walk four hours in a workday. Id. at 514. The ALJ adopted Dr. Ottney's opinion, stating that it is "well-supported by her examination and most consistent with the objective evidence and claimant's exhibited capabilities." Id. at 26. Plaintiff argues that the ALJ erred by adopting Dr. Ottney's opinion after failing to provide sufficient reasons for rejecting other medical opinions. For the reasons discussed above, we agree.

## IV. Subjective Pain Testimony

Plaintiff argues that the ALJ improperly rejected plaintiff's subjective pain testimony. The evaluation of a claimant's subjective symptoms requires a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Here, the ALJ conceded that plaintiff "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation omitted). He concluded, however, that plaintiff's symptom testimony was not credible. The ALJ did not cite any evidence of malingering, thus he must give "specific, clear and convincing reasons" for rejecting plaintiff's subjective symptoms. Id. (citation omitted).

At the hearing, plaintiff testified that he "cannot bend over" and that his legs go numb if he sits for too long. Tr. at 37. If he stands in one position for too long, he feels "sharp pain going up through [his] back." Id. at 38. Plaintiff testified that the pain is "always there" in his lower back. Id. at 40. He needs to lay down within two hours after sitting or moving around because of the pain. The ALJ gave three reasons to support his finding that plaintiff's testimony was not credible. First, he stated that the daily activities that plaintiff performs are

- 5 -

1 inconsistent with plaintiff's testimony regarding "significant functional limitations." Id. at
2 25. Next, he noted that there is no evidence of weight loss or muscle-wasting, which are
3 "two common side effects of prolonged and/or chronic pervasive pain." Id. Finally, the ALJ
4 noted that plaintiff's symptoms are not "fully corroborated by objective medical evidence."
5 Id.

6       Defendant argues that the ALJ pointed to additional reasons supporting his credibility
7 finding. Defendant refers to the ALJ's discussion of plaintiff's frequent visits to the
8 emergency room seeking pain medication, to one doctor's finding that non-physiological
9 moves appeared to aggravate plaintiff's pain, and to evidence that plaintiff's pain responded
10 to treatment. Id. at 20-21. But the ALJ did not indicate that these factors influenced his
11 credibility finding. The portions of the ALJ's opinion cited by defendant refers solely to the
12 ALJ's step two analysis. We must limit our review to the reasons that the ALJ actually relied
13 on in making his credibility determination. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.
14 2007) ("We review only the reasons provided by the ALJ in the disability determination and
15 may not affirm the ALJ on a ground upon which he did not rely.").

16       First, performance of daily activities is not necessarily a clear and convincing reason
17 to discredit plaintiff's testimony. Plaintiff's activities of daily living "do[] not in any way
18 detract from h[is] credibility as to h[is] overall disability." Vertigan v. Halter, 260 F.3d 1044,
19 1050 (9th Cir. 2001). The ALJ did not discuss how plaintiff's activities of watching
20 television, reading, fixing simple meals, occasionally grocery shopping, and walking in his
21 yard translates to the work setting. See id. (activities may be done "despite pain for
22 therapeutic reasons, but that does not mean [plaintiff can] concentrate on work") (emphasis
23 in original). Similarly, the ALJ's speculation, "without medical evidence, regarding the
24 common side effects of chronic pain" was not a clear and convincing reason supported by
25 substantial evidence. Cherry v. Astrue, CV-08-478-TUC-DCB, 2009 WL 2347075, at *13
26 (D. Ariz. July 30, 2009) (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294
27 (9th Cir. 1999)); see also Lapeirre-Gutt v. Astrue, 382 Fed. Appx. 662, 665 (9th Cir. 2010)
28 (unpublished decision) (because "no medical evidence suggests that high inactivity levels

1 necessarily lead to muscle atrophy," the ALJ's finding that plaintiff's pain testimony was not
2 credible was "not based on substantial evidence").  Finally, the ALJ cannot discredit pain
3 testimony "solely because the degree of pain alleged. . . is not supported by objective medical
4 evidence."  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted).  None of
5 the reasons offered by the ALJ are clear and convincing reasons supported by substantial
6 evidence.

## V. Use of the Medical-Vocational Guidelines

After determining that plaintiff cannot perform his past relevant work, the ALJ utilized the framework of the Medical-Vocational Guidelines ("the Grids") to conclude that plaintiff is not disabled.  The Grids contain tables that direct a conclusion of "disabled" or "not disabled" based on an applicant's age and exertional capacity.  The Grids do not, however, direct conclusions when an applicant's RFC does not match all of the criteria for a particular exertional level.  SSR 83-12, 1983 WL 31253, at *1 (1983).  When an RFC does not match all the criteria for an exertional level and the "extent of erosion of the occupational base is not clear," the ALJ must consult a vocational expert.  Id. at *2.

Both parties argue that the ALJ erred by relying solely on the Grids.  We agree.  As part of the ALJ's RFC assessment, he found that plaintiff can stand or walk for four hours in a workday.  A full range of light work, however, requires standing or walking for six hours. SSR 83-10, 1983 WL 31251, at *6 (1983).  The ALJ stated that plaintiff's additional limitations have "little or no effect on the occupational base of unskilled light work," and concluded based on the Grids that plaintiff is not disabled.  Tr. at 28.  This was error. Holohan, 246 F.3d at 1208 (ALJ may apply the Grids if they "accurately and completely describe a claimant's impairments," otherwise "ALJ must also hear testimony from a vocational expert"); Pagan-Velez v. Astrue, 09-CV-1918-PHX-GMS, 2010 WL 3789486, at *9 (D. Ariz. Sept. 22, 2010) (ALJ's use of the Grids was error when he concluded plaintiff could stand and walk for four hours, because the "full range of light work requires the ability to stand and walk for six hours").

## VI. Appropriate Remedy on Remand

1 Plaintiff argues that the appropriate remedy is to credit his subjective pain testimony 2 and Dr. Crawford's opinion as true and remand for an immediate award of benefits. We 3 credit evidence as true and remand for benefits where "(1) the ALJ has failed to provide 4 legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that 5 must be resolved before a determination of disability can be made, and (3) it is clear from the 6 record that the ALJ would be required to find the claimant disabled were such evidence 7 credited." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). However, here there are 8 issues that require resolution before a finding of disability can be made. As discussed above, 9 the ALJ erred not only in rejecting the opinion of Dr. Crawford, but also in evaluating the 10 opinion of one of plaintiff's other treating physicians, Dr. Hanks. These doctors reached 11 vastly different opinions. While Dr. Crawford's opinion suggests that plaintiff cannot 12 perform sedentary work, Dr. Hanks' opinion suggests that plaintiff is capable of more 13 exertion. Conflicts also remain between Dr. Crawford's opinion and the opinions of Dr. 14 Maloney and Dr. Ottney (and, as discussed above, the ALJ also erred in assessing these 15 opinions). Thus, it is unclear from the record that the ALJ would be required to find plaintiff 16 disabled even if the evidence is credited as true. See Santiago v. Astrue, 06-CV-3052-PHX-17 RCB, 2010 WL 466052, at *23 (D. Ariz. Feb. 10, 2010) (declining to credit plaintiff's 18 subjective symptoms or the opinion of her treating doctor as true when it was unclear from 19 the record whether benefits must be awarded).

20 A court may credit a plaintiff's symptom testimony as true even where a remand for 21 further proceedings is needed, especially in cases where a plaintiff is of advanced age and 22 has suffered a "severe delay" in the application process. Vasquez, 572 F.3d at 593-94. We 23 decline to do so in this case. Plaintiff's application was filed less than five years ago, which 24 is not an extraordinary amount of time by social security standards. See id. (severe delay 25 when application for benefits filed nearly seven years before); Loveless v. Astrue, 09-CV-26 00830-JWS, 2010 WL 2720848, at *3 (D. Ariz. July 9, 2010) (application pending nearly 27 seven years was not "an extraordinarily lengthy period of time").

28 **VII. Conclusion**

- 8 -

**IT IS ORDERED GRANTING** defendant's motion to remand (doc. 22). Accordingly, we reverse the decision of the Commissioner and remand for further proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ is directed to:

(1) reevaluate the medical source opinions of record in determining plaintiff's RFC pursuant to the standards for weighing medical opinions listed in 20 C.F.R. § 404.1527(d);

(2) reevaluate the plaintiff's subjective symptoms in determining plaintiff's RFC;

(3) obtain vocational expert testimony to determine the effect of plaintiff's specific functional limitations on his ability to perform work, if plaintiff's exertional capacity does not coincide with an exertional level;

(4) undertake a new step five analysis to determine whether there are jobs existing in significant numbers that plaintiff can perform given his age, education, work experience, and RFC.

DATED this 22nd day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge